UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MINIT MART LLC,

          Plaintiff,

    v.

SYNERGY PETROLEUM ENTERPRISES, INC.,

          Defendant.

Case No.  23-cv-02734-TSH

**ORDER RE:  CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 47, 49

## I.    INTRODUCTION

Plaintiff Minit Mart LLC ("Minit Mart") filed a complaint for breach of contract and declaratory judgment against Defendant Synergy Petroleum Enterprises, Inc. ("Synergy"), alleging Synergy failed to perform its obligations under an April 14, 2023, Purchase and Sale Agreement. ECF No. 20.[1]  Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 49 ("Def.'s Mot."), 47 ("Pl.'s Mot.").[2]  The Court finds these motions suitable for disposition without oral argument and **VACATES** the July 3, 2025, hearing.  *See* CIV. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Synergy's Motion and **GRANTS** Minit Mart's Cross-Motion.[3]

---

[1] Citations herein are to Minit Mart's unredacted complaint filed on the public docket.  *See* ECF No. 20.  Minit Mart first filed a redacted version of this same complaint.  *See* ECF No. 1.

[2] For precision's sake, citations herein are to the unredacted versions of Synergy's Motion and Separate Statement of Facts (ECF Nos. 45-3, 45-4), Synergy's Reply (ECF No. 57-3), and Synergy's declarations and exhibits in support of its respective Motion, which were filed under seal.  Most sections of these documents cited within this order can be found in redacted versions the parties filed on the public docket.  *See* ECF Nos. 49 (redacted Def.'s Mot.), 58 (redacted Def.'s Reply).

[3] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 17.

## II.    BACKGROUND

### A.    Factual Background[4]

Minit Mart is a Delaware limited liability company, with its principal place of business in Massachusetts, that is a member of EG group, a leading independent convenience retailer.  Minit Mart operates convenience stores and gas stations in several states.  Compl. ¶ 1 (ECF No. 20); Minit Mart's Separate Statement of Facts ("Pl.'s SSF") ¶¶ 1–2 (ECF No. 48).  Synergy, located in South San Francisco, California, owns and/or operates 32 convenience stores and fuel retailers in California and Washington along with its sister companies.  Compl. ¶ 2; Answer ¶ 2 (ECF No.

---

[4] As a threshold matter, the Court addresses Minit Mart's requests regarding the parties' evidence and undisputed facts.  Minit Mart states that several of Synergy's objections to Minit Mart's evidence were not submitted in Synergy's Opposition but were submitted in other documents, in violation of Civil Local Rule 7-3(a).  Pl.'s Reply (ECF No. 56) at 12:4–16 (citing ECF Nos. 53-13, 53-14, 53-15, 53-16).  Minit Mart requests that the Court strike or disregard Synergy's objections not contained in its Opposition.  *Id.* at 12:18–21; *see also* Pl.'s Mot. to Strike (ECF No. 60).  The Court **GRANTS** this request and **STRIKES** Synergy's evidentiary objections that are not stated within its Opposition.  *See, e.g., IT Casino Sols., LLC v. Transient Path, LLC*, No. 21-CV-09872-WHO, 2022 WL 17968078, at *5 n.3 (N.D. Cal. Sept. 22, 2022) (striking party's evidentiary objections not contained in its opposition).

Minit Mart states that Synergy's Motion contains factual assertions that are not contained in Synergy's Separate Statement of Facts and are not supported by cited evidence.  Pl.'s Opp. (ECF No. 51) at 21:8–22:28.  Minit Mart requests that the Court ignore these factual assertions.  *Id.* at 21:8–9.  The Court previously issued an order reminding the parties of their obligations under the Court's Case Management Order (ECF No. 24).  *See* ECF No. 43 (directing each party to file a Separate Statement of Facts "setting forth each material fact on which the party relies in support of the motion," and where "[e]ach material fact in the separate statement must be set forth in a separately numbered paragraph and refer to a specific admissible portion of the record where the fact finds support").  Accordingly, the Court **GRANTS** this request and only considers factual assertions in Synergy's Motion that are contained in its Separate Statement of Facts, supported by cited evidence.

Minit Mart states that in Synergy's Controverting Statement of Facts (ECF No. 53-16), Synergy disputes facts without referencing supporting evidence, states that facts are undisputed but qualifies them with evidentiary objections, and does not indicate whether some facts are disputed or undisputed.  Pl.'s Reply at 12:4–16.  Minit Mart asserts that Synergy's responses violate the Court's Scheduling Order (ECF No. 24) requiring parties to indicate whether they dispute each fact and to reference evidence supporting their position if a fact is disputed.  Pl.'s Reply at 14:23–15:6.  Minit Mart requests that pursuant to Federal Rule of Civil Procedure 56(e)(2) – (3), the Court deem undisputed any fact that Synergy does not dispute based on record evidence and deem admitted any fact that Synergy asserts is undisputed but qualifies with objections not made in Synergy's Opposition.  *Id.* at 15:7–13.  The Court **GRANTS IN PART** this request and deems disputed only those facts that Synergy disputes with cited record evidence and deems undisputed any facts that Synergy does not dispute but qualifies with objections that the Court strikes, as discussed above.

12); Synergy's Separate Statement of Facts ("Def.'s SSF") ¶ 2 (ECF No. 45-4).

On April 14, 2023, Minit Mart and Synergy entered into a Purchase and Sale Agreement (the "PSA") for the sale of real estate and assets related to nineteen convenience stores and fuel filling locations.  Compl. ¶ 7; Compl., Ex. A (PSA) (ECF No. 20); Pl.'s SSF ¶ 66.  Under the PSA, Synergy agreed to purchase the nineteen stores for $20,525,000 plus the cost of inventory.  PSA at Section 2; Pl.'s SSF ¶ 4.  The PSA provided for Synergy, as the buyer, to deposit $2 million in an escrow account as an earnest money deposit (the "Earnest Money") within three business days of the PSA's effective date.  Compl. ¶¶ 7–8; PSA at Section 2.A; Pl.'s SSF ¶ 72.  The PSA contemplated five separate closing dates with the "Initial Closing Date" occurring by June 19, 2023, and four subsequent "Installment Closings" occurring by June 23, 2023.  Def.'s SSF ¶¶ 25–26; Minit Mart's Controverting Statement of Facts ("Pl.'s CSF") at 9–10 (ECF No. 52).

Minit Mart alleges that Synergy breached the PSA by failing to make a nonrefundable deposit and by failing to close the transaction.  Compl. ¶ 13.  The parties agree that because Minit Mart terminated the PSA following Synergy's non-performance under the PSA, the liquidated damages provision provides the only potential remedy for Minit Mart (aside from attorneys' fees and interest).  Def.'s Mot. at 10:3–11:3; Minit Mart's Opposition to Synergy's Motion for Summary Judgment ("Pl.'s Opp.") at 1:19–25 (ECF No. 51); PSA at Section 29.

### 1.    The Parties' Negotiations

In 2022, Minit Mart decided to sell forty-five retail properties in the Greater Kansas City area and sold twenty-six of these properties to a third party.  Pl.'s SSF ¶¶ 5, 37–38.  Synergy bid unsuccessfully on the 45-property portfolio and bid on the remaining nineteen properties on December 13, 2022.  *Id.* at ¶¶ 11, 38, 42.  This began the parties' negotiations that culminated in the PSA.  *Id.* at ¶¶ 42, 47.  Synergy's principal in the negotiations was its Chief Operating Officer, Mohammad Hamdi Alzghoul ("Moe").  *Id.* at ¶ 7.

Around December 19, 2022, the parties informally agreed, subject to final negotiation, that Synergy would pay $20.5 million for the properties which included a $2.5 million nonrefundable deposit.  *Id.* at ¶¶ 47, 48.  The parties later agreed to a $2 million deposit which remained the same in the final PSA.  *Id.* at ¶¶ 48, 53–54.  During negotiations between January and April 2023, the

parties exchanged at least eight drafts of the PSA. *Id.* at ¶ 52. Director of Real Estate, Russell Robben, acted on behalf of Minit Mart during dealings with Synergy; Bradley Thompson represented Minit Mart in the negotiations. *Id.* at ¶¶ 6, 51.

On January 23, 2023, Moe and Robben spoke about the properties for the first time. *Id.* at ¶ 49. On February 09, 2023, Synergy proposed that its liability to Minit Mart be capped at the amount of Earnest Money and that the Earnest Money be treated as liquidated damages. *Id.* at ¶ 55. In this redline proposal, Synergy stated, "the damages [Minit] will incur by reason [of Synergy's breach] are and will be impractical and extremely difficult to establish," and the parties agreed in a "reasonable effort to ascertain what [Minit's] damages would be in the event of such a default" to treat the Earnest Money as liquidated damages. *Id.* (alteration in original); Pl.'s CSF at 17:3–8 (alteration in original). Minit Mart originally rejected this proposal because Thompson advised Minit Mart that he was not sure that the Earnest Money amount would sufficiently compensate Minit Mart in the event of a breach. Pl.'s SSF ¶ 56. On March 21, 2023, the parties agreed to the final language regarding liquidated damages which remained the same in the PSA. *Id.* at ¶¶ 64–65; *see* PSA at Sections 27–29.

### 2. The Purchase and Sale Agreement

On April 17, 2023, the parties executed the PSA, with an effective date of April 14, 2023. Pl.'s SSF ¶ 66. Synergy's Chief Executive Officer, Hamdi Alzghoul ("Hamdi"), executed the PSA on behalf of Synergy. Hamdi testified that he understood the terms of the PSA when he signed it. *Id.* at ¶¶ 7, 66–67. Minit Mart filed a true and correct copy of the parties' PSA with its complaint. ECF No. 20; Pl.'s SSF ¶ 4; Answer ¶ 7. Relevant portions of the PSA are listed below.

The PSA contains a "Due Diligence" provision that states, in pertinent part:

> Subject to <u>Section 9</u> below, Buyer acknowledges and agrees that it has completed its due diligence review prior to the Effective Date with respect all matters relating to this Agreement (including any inspections, environmental or otherwise, of the Stores). Except as provided in <u>Section 9</u> below, Buyer shall not conduct any further inspections of the Stores prior to the applicable Closing and, except as expressly provided herein, Buyer may not delay or otherwise prevent any Closing due to any due diligence finding after the Effective Date.

United States District Court
Northern District of California

PSA at Section 8.A.

The PSA contains an "Environmental Matters and 'AS-IS' Condition" provision that states, in pertinent part:

> AS-IS Sale. Seller and Buyer acknowledge that the sale by Seller and acceptance by Buyer of the Stores is "AS IS" and "WITH ALL FAULTS," and SELLER MAKES NO EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES REGARDING THE ABSENCE OR PRESENCE OF ENVIRONMENTAL HAZARDS . . ., PERSONAL PROPERTY, REAL PROPERTY, INVENTORY OR OTHER ASSETS, AND SELLER MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE COMPLIANCE OF PRIOR USES ON OR PRESENT CONDITIONS OF THE STORES, PERSONAL PROPERTY, INVENTORY OR OTHER ASSETS UNDER APPLICABLE ENVIRONMENTAL LAWS.

*Id.* at Section 11.B.  This same provision also states:

> Additional AS-IS, WHERE-IS Provisions. Except as expressly set forth herein, the sale of Assets is made on an "AS IS AND WHERE IS BASIS" WITHOUT WARRANTY, EXPRESS OR IMPLIED, AS TO THE FITNESS FOR USE of the Assets conveyed hereby, and WITHOUT WARRANTY OF MERCHANTABILITY.

*Id.* at Section 11.E.

The PSA contains a "Representations and Warranties" provision that states, in pertinent part:

> EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER HAS NOT MADE NOR IS IT MAKING ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY NATURE TO BUYER, AT LAW OR IN EQUITY, WITH RESPECT TO MATTERS RELATING TO SELLER, THE ASSETS OR THE BUSINESS, AND ANY SUCH OTHER REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED.

*Id.* at Section 13.A(xii).  This same provision also states, in pertinent part:

> Buyer represents, warrants and covenants that:
> . . .
>
> NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, BUYER ACKNOWLEDGES AND AGREES THAT SELLER IS NOT MAKING ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, BEYOND THOSE

EXPRESSLY GIVEN BY SELLER IN SECTION 13.A. ANY CLAIMS BUYER MAY HAVE FOR BREACH OF REPRESENTATION OR WARRANTY SHALL BE BASED SOLELY ON THE REPRESENTATIONS AND WARRANTIES OF SELLER SET FORTH IN SECTION 13.A HEREOF. THOSE REPRESENTATIONS AND WARRANTIES EXPRESSLY GIVEN BY SELLER IN SECTION 13.A SHALL NOT BE CONSTRUED TO COVER THE PHYSICAL OR ENVIRONMENTAL CONDITIONS OF THE STORE (OR OTHER COMPLIANCE CONSIDERATIONS UNDER ENVIRONMENTAL LAWS) AS BUYER IS RELYING SOLELY ON ITS INVESTIGATION OF THE STORES AND SELLER HEREBY DISCLAIMS ANY SUCH REPRESENTATIONS AND WARRANTIES. BUYER REPRESENTS TO SELLER THAT BUYER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO THE INITIAL CLOSING, SUCH INVESTIGATIONS OF THE STORES, INCLUDING BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE CONDITION OF THE STORES AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE STORES, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS AND THEIR AGENTS OR EMPLOYEES, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, WITH RESPECT THERETO.

*Id.* at Section 13.B(iv).

The PSA contains a "Seller's Remedies" provision that states:

If this Agreement is terminated for any reason other than pursuant to Sections 17, 22.A, 22.C or 22.E or by Buyer pursuant to Section 22.B, then Seller shall be entitled to retain the Earnest Money. Without limiting the generality of the foregoing, Seller shall be entitled to retain the Earnest Money if this Agreement is terminated by pursuant to Section 22.D or if this Agreement is terminated by Seller pursuant to Section 22.B.

*Id.* at Section 27.

The PSA contains a "Buyer's Remedies" provision that states:

If this Agreement is terminated pursuant to Sections 18, 22.A, 22.C or 22.E or by Buyer pursuant to Section 22.B, then Buyer shall be refunded the Earnest Money.

*Id.* at Section 28.

The PSA contains a "Specific Performance" provision that states, in pertinent part:

Notwithstanding the foregoing, in the event Buyer breaches its obligation to consummate the Initial Closing and Seller elects to terminate this Agreement, (A) the damages Seller will incur by reason

1

2

3

4

> thereof are and will be impractical and extremely difficult to establish,
> (B) Buyer and Seller, in a reasonable effort to ascertain what Seller's
> damages would be in the event of such a default by Buyer, have
> agreed that such damages shall be in an amount equal to the amount
> of the Earnest Money and (C) that such Earnest Money shall be
> retained by Seller as liquidated damages, which damages shall be
> Seller's sole and exclusive remedy at law or in equity in the event of
> and for such default by Buyer to not consummate the Initial Closing.

5   *Id.* at Section 29.

6       The PSA contains an "Exclusive Agreement" provision that states:

7

8

9

> Buyer and Seller agree that all understandings and agreements hereto
> had between them are merged in this Agreement, which, together with
> all documents and instruments to be delivered pursuant to the terms
> of this Agreement, completely expresses their agreement. This
> Agreement may not be changed or altered except in a writing signed
> by both Buyer and Seller.

10

11   *Id.* at Section 32.

12       The PSA contains an "Expenses" provision that states, in pertinent part:

13

14

15

> In the event that either party seeks judicial interpretation or
> enforcement of this Agreement, upon a non-appealable final order,
> the prevailing party in such action shall receive from the non-
> prevailing party the legal fees and expenses of the prevailing party in
> addition to the other award(s) granted to the prevailing party therein.

16   *Id.* at Section 37.

17       **3.**    **Events After the Parties Signed the Purchase and Sale Agreement**

18       Synergy did not make the Earnest Money payment or proceed to close the transaction as

19   contemplated in the PSA.  Compl. ¶¶ 12–14; Pl.'s SSF ¶¶ 73, 96; Def.'s SSF ¶ 34.  On or around

20   May 2, 2023, Synergy decided not to proceed with the transaction.  Pl.'s SSF ¶ 96; Def.'s SSF ¶

21   34.  The parties dispute the reason why Synergy decided to not make the Earnest Money payment

22   or to not close the transaction.  Moe testified that he visited the nineteen properties on May 2,

23   2023, over the course of four or five hours.  Pl.'s SSF ¶ 89.  Moe states that on that same day, he

24   was advised that the real estate portfolio was not worth the purchase price but was worth

25   "somewhere south of 14,000,000.00."  *Id.* at ¶¶ 90, 93.  Moe states that Synergy did not proceed

26   with the transaction because the properties suffered from deficiencies that he did not anticipate.

27   *Id.* at ¶ 89.  Minit Mart states that there is no evidence, other than Moe's testimony, that the

28   properties suffered from any defects.  *Id.* at ¶ 104.

United States District Court
Northern District of California

7

1    On May 18, 2023, Minit Mart notified Synergy that Synergy was in default under the PSA

2    due to Synergy not making the Earnest Money payment.  Def.'s SSF ¶ 37; Pl.'s CSF at 13:18–23.

3    On August 10, 2023, after filing its complaint, Minit Mart notified Synergy that it was terminating

4    the PSA because of Synergy's breach.  Pl.'s SSF ¶ 103.  On April 18, 2024, Minit Mart entered

5    into an agreement with another buyer for the sale of the real estate and assets covered in the

6    PSA—this deal closed in November 2024.  Def.'s SSF ¶¶ 41–42; Pl.'s CSF at 15.

7    **B.     Procedural Background**

8        Minit Mart filed its original complaint on June 1, 2023, and filed an unredacted version of

9    this complaint on the public docket on July 31, 2023.  ECF Nos. 1 (redacted), 20 (unredacted).  It

10   alleges two causes of action:  (1) Breach of Contract and Specific Performance; and (2)

11   Declaratory Judgment.  Compl. at 4–6.  It also seeks attorneys' fees and interest.  *Id.* at 7.  On June

12   26, 2023, Synergy filed an answer asserting several affirmative defenses.  Answer at 6–9.

13   Synergy seeks rescission of the PSA "as a result of, *inter alia*, mistake and fraud."  Joint Case

14   Management Statement at 2:10–11 (ECF No. 23).

15       As to its breach of contract claim, Minit Mart alleges that Synergy breached its obligations

16   under the PSA by refusing to fund the Earnest Money and by refusing to close the transaction.

17   Compl. ¶¶ 13, 22.  Minit Mart requests an order for specific performance requiring Synergy to

18   perform these obligations or in the alternative, an award for damages.  *Id.* at ¶¶ 27–28.  As to its

19   declaratory judgment claim, Minit Mart requests that the Court declare "that Synergy is obligated

20   to and must: (a) fund the Earnest Money; and (b) consummate the transaction contemplated by the

21   Purchase Agreement, including taking all steps necessary to complete the Closing."  *Id.* at ¶¶ 31–

22   32.

23       Synergy filed its Motion for Summary Judgment on May 1, 2025, arguing summary

24   judgment in its favor is appropriate (1) for Minit Mart's breach of contract claim because the

25   liquidated damages provision supplies the only remedy available to Minit Mart under the PSA and

26   that provision is unenforceable; and (2) for Minit Mart's declaratory judgment claim because

27   specific performance is barred by the PSA.  Def.'s Mot. at 2–3 (ECF No. 45-3).  Minit Mart filed

28   an opposition on May 27, 2025.  ECF No. 51 ("Pl.'s Opp.").  Synergy filed a reply on June 9,

United States District Court
Northern District of California

1    2025.  ECF No. 56 ("Def.'s Reply").

2          Minit Mart filed its Cross-Motion for Summary Judgment on May 2, 2025, arguing there is

3    no genuine dispute as to its breach of contract claim and summary judgment is appropriate in its

4    favor.  ECF No. 47.  Specifically, Minit Mart requests that the Court

5            rule that undisputed evidence shows: (1) the parties entered into a
             binding contract for the purchase of nineteen convenience store
6            properties; (2) Defendant breached the contract; (3) the contract
             provides for liquidated damages in the amount of the $2 million in the
7            event of Defendant's breach; (4) the liquidated damages provision is
             enforceable; (5) Defendant has no valid defenses to liability for its
8            breach; and (6) Plaintiff is entitled to attorneys' fees and pre- and
             post-judgment interest.
9

10   Pl.'s Mot. at 1:10–15.  Synergy filed an opposition on May 27, 2025.  ECF No. 53 ("Def.'s

11   Opp.").  Minit Mart filed a reply on June 09, 2025.  ECF No. 56 ("Pl.'s Reply").

12                              **III.   LEGAL STANDARD**

13         Summary judgment is proper where there is "no genuine dispute as to any material fact and

14   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving

15   for summary judgment bears the initial burden of identifying those portions of the pleadings,

16   discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

17   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome

18   of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

19   reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

20   U.S. 242, 248 (1986).

21         If the moving party meets its initial burden, the opposing party must then set forth specific

22   facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.

23   at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving

24   party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the

25   task of the Court "to scour the record in search of a genuine issue of triable fact."  *Keenan v.*

26   *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with

27   reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Cafasso,*

28   *U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (noting the nonmoving

United States District Court
Northern District of California

party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations") (cleaned up). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (cleaned up).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")). If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (cleaned up).

## IV.  DISCUSSION

Minit Mart requests the Court grant it summary judgment that Synergy breached the binding PSA, that Synergy has no valid defenses to liability for its breach, and that Synergy is liable to Minit Mart in the amount of $2 million liquidated damages plus attorneys' fees, costs, and interest. Pl.'s Mot. at 1:10–15. Synergy argues that its fraudulent inducement defense precludes summary judgment in Minit Mart's favor. Def.'s Opp. at 1:10–17. Synergy requests the Court grant it summary judgment on Minit Mart's breach of contract claim because the sole remedy available to Minit Mart, the liquidated damages provision, is unenforceable, and on Minit Mart's declaratory judgment claim because specific performance is barred by the PSA. Def.'s Mot. at 2–3.

In sum, the Court concludes that Synergy breached its obligations under the PSA, that Synergy does not have a valid fraudulent inducement defense to its breach, and that the liquidated

United States District Court
Northern District of California

1   damages provision in the PSA is enforceable.  Therefore, summary judgment for Minit Mart is

2   warranted on its breach of contract claim and claim for attorneys' fees and interest.  However,

3   because the only remedy available to Minit Mart under the PSA is liquidated damages, summary

4   judgment for Synergy is warranted on Minit Mart's declaratory judgment claim.

5   **A.    Choice of Law**

6          In determining the controlling substantive law, a federal court sitting in diversity must look

7   to the forum state's choice of law rules.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing

8   *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)).  Under California law, a

9   choice of law provision will be enforced when:  (1) the chosen state has a substantial relationship

10  to the parties or their transaction, or there is any other reasonable basis for the parties' choice of

11  law; and (2) the chosen state's law is not contrary to a fundamental policy of California.  *Nedlloyd*

12  *Lines B.V. v. Superior Court of San Mateo*, 3 Cal. 4th 459, 464-66 (1992); *see also Windsor Mills,*

13  *Inc., v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 995-96 n.6 (1972) (noting parties may

14  expressly agree what law shall govern their contract).

15         Minit Mart argues that Delaware law should govern this dispute.  Pl.'s Mot. at 12:11–12;

16  *see* PSA at Section 35 ("Applicable Law:  This Agreement shall be governed by and construed in

17  accordance with the laws of the State of Delaware.").  Synergy takes the same position.  Def.'s

18  Mot. at 10:2.  Where the parties agree on the governing law, the Court need not engage in a

19  choice-of-law analysis.  *See Baker v. Cottrell, Inc.*, No. 1:16–cv–00840–DAD–SAB, 2017 WL

20  6730572, at *3 n.1 (E.D. Cal. Dec. 29, 2017) ("[N]either party has argued that any law other than

21  California law should apply.  The court therefore need not engage in a choice of law analysis.");

22  *Sullivan v. Certain Underwriters at Lloyds*, No. 3:15–cv–926–YY, 2016 WL 7422649, at *2 (D.

23  Or. Dec. 22, 2016) ("Because the parties agree that Washington law applies . . . the Court will not

24  perform a choice of law analysis").  Accordingly, Delaware law governs this dispute.

25  **B.    Evidentiary Issues[5]**

26         Synergy objects to the Declaration of Bradley Thompson (ECF No. 47-1) because it "lacks

27  _____

28  [5] Minit Mart filed objections to evidence Synergy proffered in Synergy's Reply.  ECF No. 61.

1    foundation and is opinion testimony, among other defects." Def.'s Opp. at 13:3–4.  Synergy

2    argues that "the facts attorney Thompson attempts to establish lack foundation and are irrelevant,"

3    and specifically objects to paragraphs 6–8 of the Thompson Declaration.  *Id.* at 13:9–23.

4    Synergy's objections to the Thompson Declaration center around its proposition that an attorney

5    affidavit based on "information and belief" "cannot, without more, establish that material facts are

6    in dispute."  *Id.* at 12:1–23.

7          To the extent that Synergy objects to the Declaration as lacking foundation or as

8    containing expert opinions, those arguments fail.  A witness may testify to matters within their

9    personal knowledge, *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is

10   introduced sufficient to support a finding that the witness has personal knowledge of the matter.

11   Evidence to prove personal knowledge may consist of the witness's own testimony."), and may

12   also give lay opinion testimony.  *See* Fed. R. Evid. 701.  Here, Minit Mart argues that "Mr.

13   Thompson demonstrates his personal knowledge by testifying that he was principally responsible

14   for negotiating the PSA with Synergy," and that "Mr. Thompson has direct personal knowledge of

15   what was in the drafts that the parties exchanged and his rationale" for making decisions regarding

16   revisions to the PSA.  Pl.'s Reply at 10:14–24 (citing Thompson Decl. ¶¶ 2, 4-8, 10-11).  The

17   Court agrees.  Thompson's knowledge of the parties' negotiations and documents exchanged

18   during negotiations comes from his direct involvement in these negotiations and is not based on

19   "information and belief."  Therefore, Minit Mart properly established a foundation for

20   Thompson's testimony.  Further, to the extent that Thompson's declaration contains opinions, they

21   are admissible under Rule 701.  The Court will not consider relevance objections in the context of

22   a summary judgment motion because the relevance or irrelevance of any given piece of evidence

23   merges with the question of whether there are triable questions of material fact.

24          Accordingly, Synergy's objections to the Thompson Declaration are **OVERRULED**.

25   **C.    Breach of Contract Claim**

26          Minit Mart argues that it has established an undisputed *prima facie* case for breach of

27   _____

28   Because the Court does not rely on any of the evidence objected to by Minit Mart, the Court does
     not rule on these objections.

United States District Court
Northern District of California

contract because

> [t]here is no dispute (1) that Minit and Synergy entered into the PSA effective April 14, 2023, (2) that the PSA required Synergy to make a $2 million Earnest Money deposit no later than April 19, 2023 and (3) that Synergy declined to deposit the Earnest Money. There is also no dispute that the PSA requires Synergy pay liquidated damages of $2 million (the amount of the Earnest Money) as a remedy for its breach.

Pl.'s Reply at 2:20–26.

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016) (citation omitted). Partial summary judgment is appropriate on the breach element if there is no genuine issue of fact that a party breached a contract. *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 144 (Del. 2009). However, courts will not enforce a valid contract on summary judgment if the party accused of breach establishes valid affirmative defenses to enforcement. *Corkscrew Min. Ventures, Ltd. v. Preferred Real Est. Invs., Inc.*, No. CIV.A.4601-VCP, 2011 WL 704470, at *4 (Del. Ch. Feb. 28, 2011) (citing *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010)).

Here, there is no dispute that the PSA is a valid and enforceable contract, that Synergy failed to perform under the PSA, that the PSA requires Synergy to pay $2 million as liquidated damages as a remedy for its breach, and that the liquidated damages provision is the sole remedy available to Minit Mart. Pl.'s SSF ¶¶ 70, 73, 96; Def.'s SSF ¶ 34; Def.'s Mot. at 10:3–11:3; Pl.'s Opp. at 1:19–25. But Synergy asserts that two affirmative defenses preclude summary judgment in Minit Mart's favor: (1) Synergy was fraudulently induced by Minit Mart to enter the PSA; and (2) the liquidated damages provision is unenforceable. Def.'s Opp. at 1:9–21; Def.'s Mot. at 10:3–10. Synergy bears the burden of proving both of its affirmative defenses. *See Corkscrew*, 2011 WL 704470, at *4 (noting party asserting fraudulent inducement bears the burden of proving the defense); *Unbound Partners L.P. v. Invoy Holdings Inc.*, 251 A.3d 1016, 1034 (Del. Super. Ct. 2021) ("Where, as here, liquidated damages are resisted as penal, the burden is on the party seeking elimination of the purported penalty to establish both penalty-analysis prongs."). This Synergy has failed to do.

1    Accordingly, the Court grants Minit Mart summary judgment on its breach of contract

2    claim, and the Court denies Synergy summary judgment on the breach of contract claim.

3        **1.    Fraudulent Inducement Defense**

4    Minit Mart argues that summary judgment in its favor is proper because (1) the PSA

5    precludes Synergy's fraud claim; and (2) Synergy fails to adduce evidence to support its fraud

6    claim.  Pl.'s Mot. at 1:27–2:6.  Synergy contends that the Court should deny Minit Mart's Motion

7    because there is a question of fact as to whether Synergy was fraudulently induced by Minit

8    Mart's extra-contractual statements to enter the PSA.  Def.'s Opp. at 1:9–17.

9        **a.    The PSA Bars An Extra-Contractual Fraudulent Inducement Defense**

10    Under Delaware law, an "explicit anti-reliance" provision in a contract bars a fraud claim

11    premised on extra-contractual statements when the provision clearly indicates that the aggrieved

12    party "has contractually promised that it did not rely upon statements outside the contract's four

13    corners in deciding to sign the contract."  *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891

14    A.2d 1032, 1058–59 (Del. Ch. 2006); *see also FdG Logistics LLC v. A&R Logistics Holdings,*

15    *Inc.*, 131 A.3d 842, 860 (Del. Ch. 2016) (emphasis in original) (observing courts "will not bar a

16    contracting party from asserting claims for fraud based on representations outside the four corners

17    of the agreement unless *that contracting party* unambiguously disclaims reliance on such

18    statements").  While the language in an anti-reliance provision may vary, "the disclaimer must

19    come from the point of view of the aggrieved party . . . to ensure the preclusion of fraud claims for

20    extra-contractual statements."  *FdG Logistics*, 131 A.3d at 860.

21    Here, the PSA's clear terms constitute an explicit anti-reliance provision that precludes

22    Synergy's extra-contractual fraudulent inducement defense.  The PSA contains a "Representations

23    and Warranties" provision that states, in all capital letters, that Synergy

24    **ACKNOWLEDGES AND AGREES THAT SELLER IS NOT**
     **MAKING ANY REPRESENTATIONS OR WARRANTIES**
25    **WHATSOEVER, EXPRESS OR IMPLIED, BEYOND THOSE**
     **EXPRESSLY GIVEN BY SELLER IN <u>SECTION 13.A</u>**. ANY
26    CLAIMS   BUYER   MAY   HAVE   FOR   BREACH   OF
     REPRESENTATION  OR  WARRANTY  SHALL  BE  BASED
27    **SOLELY ON THE REPRESENTATIONS AND WARRANTIES**
     **OF SELLER SET FORTH IN <u>SECTION 13.A</u> HEREOF**. THOSE
28    REPRESENTATIONS AND WARRANTIES EXPRESSLY GIVEN

United States District Court
Northern District of California

14

1
2
3
4
5
6
7
8
9
10
11

BY SELLER IN <u>SECTION 13.A</u> SHALL NOT BE CONSTRUED TO COVER THE PHYSICAL OR ENVIRONMENTAL CONDITIONS OF THE STORE (OR OTHER COMPLIANCE CONSIDERATIONS UNDER ENVIRONMENTAL LAWS) AS **BUYER IS RELYING SOLELY ON ITS INVESTIGATION OF THE STORES** AND SELLER HEREBY DISCLAIMS ANY SUCH REPRESENTATIONS AND WARRANTIES. BUYER REPRESENTS TO SELLER THAT BUYER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO THE INITIAL CLOSING, SUCH INVESTIGATIONS OF THE STORES, INCLUDING BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE CONDITION OF THE STORES AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE STORES, AND **WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER**, OR ITS AND THEIR AGENTS OR EMPLOYEES, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, WITH RESPECT THERETO.

12  PSA at Section 13.B(iv) (emphasis in bold added).  The PSA also contains an integration clause

13  that states all agreements between the parties are merged in the PSA and that the PSA "completely

14  expresses [the parties'] agreement."  *Id.* at Section 32.

15      As in *Prairie Cap. III, L.P. v. Double E Holding Corp.*, because the PSA's language

16  establishes that Synergy "only relied on particular information," the PSA "establishes the universe

17  of information on which" Synergy relied.  132 A.3d 35, 51 (Del. Ch. 2015).  In *Prairie*, the

18  contract foreclosed fraud claims based on extra-contractual statements because the "exclusive

19  representations" and standard "integration" clauses established that the aggrieved party "only

20  relied on the representations and warranties in the [contract]."  *Id.* at 51.  The contract stated that

21  the aggrieved party "relied on (a) the results of its own independent investigation and (b) the

22  representations and warranties of the [other parties] expressly and specifically set forth in this

23  Agreement."  *Id.* at 50.  Similarly, in the PSA, Synergy promises that it relied "solely on the

24  representations and warranties" of Minit Mart in Section 13.A of the PSA and "solely upon" its

25  own "investigations of the stores."  PSA at Section 13.B(iv).  Synergy also promises that it is not

26  relying "upon any information provided by or on behalf of" Minit Mart.  *Id.*  Overall, the PSA's

27  language indicates that Synergy unambiguously disclaimed reliance on extra-contractual

28  statements in deciding to sign the PSA.  *See Manti Holdings, LLC v. Authentix Acquisition Co.*,

1  *Inc.*, 261 A.3d 1199, 1208 (Del. 2021) ("When a contract is clear and unambiguous, the court will

2  give effect to the plain meaning of the contract's terms and provisions.").

3  　　　　Synergy's arguments that the PSA does not contain an explicit anti-reliance provision are

4  unpersuasive.  Synergy argues that the PSA does not contain any provisions that "constitute a

5  specific acknowledgement by Synergy that it is only relying on the information contained within

6  the four corners of the agreement."  Def.'s Opp. at 6:19–20.  According to Synergy, Section

7  13.B(iv) of the PSA states disclaimers made by Minit Mart.  *Id.* at 6:15–18.  But Synergy does not

8  address the language indicating that it only relied on intra-contractual statements and its own

9  investigation and did not rely on information outside of the PSA.  *Cf. Prairie*,132 A.3d at 50–51.

10  And while Synergy is correct that "an integration clause alone cannot preclude a claim of extra-

11  contractual fraud," the integration clause in the PSA merely supports the conclusion that Synergy

12  did not rely on extra-contractual statements.  Def.'s Opp. at 6:28–7:1.

13  　　　　Synergy's cited cases are distinguishable.  Unlike in *FdG Logistics LLC v. A&R Logistics*

14  *Holdings, Inc.* and *Anvil Holding Corp. v. Iron Acquisition Co.*, the PSA contains a disclaimer

15  from the point of view of the aggrieved party, Synergy.  *FdG*, 131 A.3d at 842; *Anvil Holding*

16  *Corp. v. Iron Acquisition Co.*, No. CIV.A. 7975-VCP, 2013 WL 2249655 (Del. Ch. May 17,

17  2013).  In *FdG*, the representations clause contained language that the seller (the party accused of

18  making fraudulent statements) made no representations or warranties outside of the contract; there

19  was no language indicating that the aggrieved party did not rely on extra-contractual statements.

20  *FdG*, 131 A.3d at 857–858, 860.  The contract in *Anvil* likewise was devoid of language indicating

21  that the aggrieved party did not rely on statements made to it outside of the contract when deciding

22  to enter the contract.  *Anvil*, 2013 WL 2249655, at *7–9.  And in contrast to *Fortis Advisors LLC*

23  *v. Johnson & Johnson*, where the contract contained a one-sided anti-reliance provision where the

24  non-aggrieved party disclaimed reliance on representations made outside of the contract, the PSA

25  explicitly states that Synergy did not rely on extra-contractual information.  *Fortis Advisors LLC*

26  *v. Johnson & Johnson*, No. CV 2020-0881-LWW, 2021 WL 5893997, at *8–12 (Del. Ch. Dec. 13,

27  2021).

28

United States District Court
Northern District of California

1    Accordingly, the PSA bars Synergy's fraudulent inducement defense.[6]

2    **2.    The Liquidated Damages Provision Is Valid and Enforceable**

3    Both parties move for summary judgment on the liquidated damages ("LD") provision.

4    Minit Mart argues that summary judgment in its favor is proper because the LD provision is

5    enforceable.  Pl.'s Mot. at 22:18–20.  Synergy argues that summary judgment in its favor is proper

6    because the sole remedy available to Minit Mart under the PSA, the LD provision, is

7    unenforceable—Synergy repeats these arguments in its opposition to Minit Mart's Motion.  Def.'s

8    Mot. at 10:3–10; Def.'s Opp. at 1:18–2:1.  Minit Mart contends that Synergy fails to meet its

9    burden of showing that the LD provision is unenforceable.  Pl.'s Opp. at 1:2–8.

10    Under Delaware law, LD provisions are legally unenforceable if the parties intended the

11    provision as a penalty "because contract law does not allow parties to impose a penalty for early

12    termination."  *Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006).

13    Courts use a two-prong test to analyze the validity of an LD provision:  "Where [1] the damages

14    are uncertain and [2] the amount agreed upon is reasonable, such an agreement will not be

15    disturbed."  *Id.* at 651.  The validity of an LD provision is a question of law—this involves a

16    review of the parties' intention to the contract which is a question of fact.  *Id.* at 650.  The party

17    resisting the LD provision as penal bears the burden of proving that it is unenforceable.  *Unbound*,

18    251 A.3d at 1034.  Moreover, Delaware courts have held that LD provisions are presumptively

19    valid.  *E.g., Bhaskar S. Palekar, M.D., P.A. v. Batra*, No. CIV.A. 08C-10-269JOH, 2010 WL

20    2501517, at *6 (Del. Super. Ct. May 18, 2010).

21    "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction

22    should be that which would be understood by an objective, reasonable third party."  *Osborn*, 991

23    A.2d at 1159 (cleaned up).  "When a contract is clear and unambiguous, the court will give effect

24    to the plain meaning of the contract's terms and provisions."  *Manti*, 261 A.3d at 1208 (cleaned

25    up).

26

27    [6] The Court therefore does not reach Minit Mart's alternative argument that that even if Synergy's
      fraud defense is not barred by the PSA, Synergy does not have a valid fraud defense because

28    "Synergy identifies no evidence of any false statement by Minit, no scienter and no reliance on
      any alleged statement—justified or not."  Pl.'s Reply at 1:9–10.

17

1    Here, Synergy fails to show that the LD provision in the PSA is unenforceable. First, there

2    is no evidence that the parties intended the LD provision to function as a penalty. The LD

3    provision in the PSA states:

> in the event Buyer breaches its obligation to consummate the Initial
> Closing and Seller elects to terminate this Agreement, (A) the
> damages Seller will incur by reason thereof are and will be
> impractical and extremely difficult to establish, (B) Buyer and Seller,
> in a reasonable effort to ascertain what Seller's damages would be in
> the event of such a default by Buyer, have agreed that such damages
> shall be in an amount equal to the amount of the Earnest Money and
> (C) that such Earnest Money shall be retained by Seller as liquidated
> damages[.]

9    PSA at Section 29. This language is unambiguous—both parties agreed that Minit Mart's

10   damages were difficult to ascertain at contracting and that the amount of liquidated damages was

11   the product of the parties' reasonable effort to ascertain those damages. Synergy offers no

12   explanation for why the Court should disregard the LD provision's clear language. Instead,

13   Synergy argues that "the intent of the liquidated damages clause by the drafting parties was to

14   guarantee Synergy's performance and not to estimate Minit Mart's damages." Def.'s Mot. at

15   14:3–4. But it was Synergy that proposed the language in the LD provision regarding uncertainty

16   and reasonable effort. Pl.'s SSF ¶ 55; Pl.'s CSF at 17:3–8; Thompson Decl., Ex. B (ECF No. 47-

17   3); *see Brazen v. Bell Atl. Corp.*, 695 A.2d 43, 47 n.9 (Del. 1997) ("[T]he drafters of corporate

18   documents bear the responsibility for the selection of appropriate and clear language."). And

19   Synergy's CEO testified that he read and understood the PSA before he signed it. Pl.'s SSF ¶ 67.

20   Moreover, the Court cannot consider Synergy's proffered extrinsic evidence of the parties' intent.

21   *See Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 326 A.3d 356, 364 (Del. 2024) ("The

22   parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written

23   contract for the purpose of varying or contradicting the terms of that contract.") (cleaned up).

24   Therefore, the undisputed evidence shows that the parties did not intend the LD provision as a

25   penalty for early termination.

26    Second, Synergy's arguments that the LD provision is unenforceable as a matter of law are

27   unpersuasive. Synergy argues that at the time of contracting, damages "were certain and

28   calculable with a fair amount of precision." Def.'s Mot. at 12:20–22. Under the first prong of

United States District Court
Northern District of California

1   Delaware's test, an LD provision is valid where "the damages that would result from a breach of

2   the [contract are] *uncertain or incapable of accurate calculation.*"  *Swier*, 900 A.2d at 651

3   (emphasis in original).  If a contract does not contain "a fortuitous (but unusual) term admitting

4   that damages are uncertain," courts consider "information surrounding the circumstances under

5   which the parties chose the disputed amount."  *Unbound*, 251 A.3d at 1035.  But here, the PSA

6   contains such a fortuitous term—the LD provision states that the damages are "impractical and

7   extremely difficult to establish."  PSA at Section 29.  The Court cannot disturb the parties'

8   conclusion regarding the uncertainty of damages.  *See Piccotti's Rest. v. Gracie's, Inc.*, No. C.A.

9   86C-MR-115, 1988 WL 15338, at *2 (Del. Super. Ct. Feb. 23, 1988) ("[W]here the parties

10  themselves have unambiguously concluded that such a value is difficult to ascertain should the

11  agreement be breached, this Court will not construe that conclusion differently.").  Therefore,

12  Synergy has not shown that the LD provision is unenforceable under prong one.

13      Synergy next argues that the LD amount "is not rationally related to a measure of

14  damages."  Def.'s Mot. at 14:23–24.  Under the second prong of Delaware's test, an LD provision

15  is unenforceable where the amount at issue is "*unconscionable or not rationally related* to any

16  measure of damages a party might conceivably sustain."  *Swier*, 900 A.2d at 651 (emphasis in

17  original).  Two factors aid in determining reasonableness—"the anticipated loss by either

18  party should [contract performance] not occur," and "the difficulty of calculating that loss: the

19  greater the difficulty, the easier it is to show that the amount fixed was reasonable."  *Brazen*, 695

20  A.2d at 48.  An LD provision lacks a rational basis "where the recourse chosen is totally outside

21  the breach's natural dimensions, is inconsistent with the parties' relationship, or grants a secured

22  lender the power to break the law."  *Unbound*, 251 A.3d at 1035.   While not dispositive, relevant

23  factors in assessing whether an LD provision had a rational basis include the "degree of

24  sophistication, arsenal of resources, and presence of counsel at the negotiation table."  *Id.* at 1036.

25      Here, Synergy does not cite to any evidence showing that the amount of the LD provision

26  is not rationally related to any measure of damages Minit Mart could conceivably sustain.

27  Synergy states, without referencing any evidence, that "[t]he seller's costs on a deal of this size

28  would never reach $2 million."  Def.'s Mot. at 14:2.  However, Synergy's own real estate

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    transactions expert, Robert Unell, testified that it was "very possible" that at the time Synergy

2    decided not to proceed with the transaction, the properties were worth $6 million less than the

3    purchase.  Declaration of Joseph A. Meckes, Ex. D, at 132:8–25 (ECF No. 47-13).  Unell further

4    agreed that it was conceivable that Minit Mart could have received $6 million less for the resale of

5    the properties than contemplated in the PSA.  *Id.* at 133:1–12.  Therefore, Unell's testimony

6    indicates that $2 million was rationally related to damages that Minit Mart could conceivably

7    sustain in the event Synergy breached the PSA and was certainly not outside the breach's natural

8    dimensions.

9            Further, Synergy's argument that the LD provision is unreasonable because "Minit did not

10   suffer any damages" is misplaced.  Def.'s Mot. at 18:9–20.  Even if Minit Mart has no actual

11   damages—a fact that Synergy does not support with evidence—Synergy's argument is foreclosed

12   by Delaware law.  *See Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 546 (3d Cir. 1988)

13   ("[U]nder Delaware law damages are recoverable under a valid liquidated damages provision even

14   though no actual damages are proven as a consequence of that breach.") (citing *Piccotti's*, 1988

15   WL 15338, at *3).  Finally, Synergy's argument that the LD provision is void because "it was not

16   derived from any assessment or analysis of the anticipated damages" likewise fails.  Def.'s Mot. at

17   13:19–20.  Synergy does not cite to any Delaware authority for this proposition.  Therefore,

18   Synergy has not shown that the LD provision is unenforceable under prong two.

19           Accordingly, the LD provision in the PSA is valid and enforceable.

20   **D.    Declaratory Judgment Claim**

21           In its complaint, Minit Mart asserted a claim for declaratory judgment requesting that the

22   Court declare "that Synergy is obligated to and must: (a) fund the Earnest Money; and (b)

23   consummate the transaction contemplated by the Purchase Agreement, including taking all steps

24   necessary to complete the Closing."  Compl. ¶¶ 31–32.  Synergy argues that summary judgment in

25   Minit Mart's favor on this claim is precluded because specific performance is barred by the PSA.

26   Def.'s Mot. at 2–3.

27           "A declaratory judgment is better understood as a remedy than a sort of substantive claim

28   or action."  *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 202 (Del. Super.

1    Ct. 2020).  Here, it is unclear from Mini Mart's motion for summary judgment whether it seeks

2    judgment in its favor on the declaratory judgment claim.  Moreover, in its Opposition, Minit Mart

3    does not directly address Synergy's Motion regarding the declaratory judgment claim.[7]  As

4    discussed, the parties agree that the liquidated damages provision provides the only remedy

5    available to Minit Mart under the PSA.  Def.'s Mot. at 10:3–11:3; Pl.'s Opp. at 1:19–25; PSA at

6    Section 29.  Thus, the Court cannot award Minit Mart any other remedy, including a declaratory

7    judgment.

8         Accordingly, the Court grants Synergy summary judgment on Minit Mart's declaratory

9    judgment claim.

10   **E.    Attorneys' Fees and Interest**

11        As part of its Motion, Minit Mart argues it is entitled to attorneys' fees and pre- and-post-

12   judgment interest if it is the prevailing party.  Pl.'s Mot. at 22:22–23.  Synergy does not address

13   this claim in its Opposition.

14        Delaware law requires that courts enforce fee shifting provisions where the fees requested

15   are reasonable.  *See Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245–46 (Del. 2007)

16   (enforcing attorneys' fees provision after determining that requested attorneys' fees and expenses

17   were reasonable).  Federal courts sitting in diversity apply state law to claims for prejudgment

18   interest.  *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007).  "[I]nterest is a matter of right

19   in Delaware"; however, trial courts have "discretion to reduce the amount of interest due,

20   especially where the party seeking interest has caused delay."  *Bell Atl.-Delaware, Inc./Verizon*

21   *Delaware, Inc. v. Saporito*, 922 A.2d 414, at *3 (Del. 2007) (unpublished) (citing *Moskowitz v.*

22   *Mayor and Council of Wilmington,* 391 A.2d 209, 211 (Del. 1978)).

23        Here, because the Court grants Minit Mart summary judgment on its breach of contract

24   _____

25   [7] In its Opposition to Synergy's Motion, Minit Mart does not indicate that it seeks a declaratory
     judgment.  *See* Pl.'s Opp. at 1:19–25 ("Synergy is correct that Minit cannot (and does not) seek
26   specific performance of Synergy's obligations under the PSA because it terminated the PSA in
     August 2023.  Although Minit brought this case seeking specific performance, it terminated the
27   PSA because Synergy went on to accuse Minit of fraud and misconduct.  As set forth in Minit's
     cross-motion for summary judgment, Synergy admits reneging on the PSA and offers no
28   cognizable defenses.  Accordingly, Minit now seeks only liquidated damages of $2 million for
     Synergy's unexcused breach along with its attorneys' fees and pre- and post-judgment interest.").

United States District Court
Northern District of California

claim, Minit Mart is entitled to attorneys' fees under the terms of the PSA.  *See* PSA at Section 37 ("[T]he prevailing party . . . shall receive from the non-prevailing party the legal fees and expenses of the prevailing party in addition to the other award(s) granted to the prevailing party therein."). Under Delaware law, Minit Mart is also permitted to seek prejudgment interest on its liquidated damages.  *See Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 487 (Del. 2011) (noting that in Delaware "strong public policy [] favors providing full compensation to prevailing plaintiffs who do not contribute to the defendant's delay in paying") (alteration in original).  Post-judgment interest is available under federal law pursuant to 28 U.S.C. § 1961.

Accordingly, the Court grants Minit Mart summary judgment on its claim for attorneys' fees and interest.  Minit Mart is directed to file an application for its reasonable attorneys' fees and pre- and post-judgment interest.

## V.    CONCLUSION

For the foregoing reasons, Synergy's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** and Minit Mart's Cross-Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 2, 2025

THOMAS S. HIXSON
United States Magistrate Judge